**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARC JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER ANTHONY M. DILLEY, DISTRICT ATTORNEY MATTHEW CULLEN, THE CITY OF PITTSBURGH and THE COUNTY OF ALLEGHENY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 25-1202 |

## MEMORANDUM OPINION

Plaintiff Marc Johnson ("Plaintiff") filed his Complaint (Docket No. 1) in this matter pursuant to 42 U.S.C. § 1983 alleging that his civil rights were violated by Defendant City of Pittsburgh (the "City") and others, during his arrest on October 18, 2024, and in the course of the subsequent prosecution of charges against him. Presently before the Court is the City's Motion to Dismiss Plaintiff's Complaint (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and supporting brief (Docket Nos. 24, 25), Plaintiff's briefs in opposition[1] (Docket Nos. 44, 45),[2] and the City's reply brief (Docket No. 48). For the following reasons, the City's Motion will be granted and Plaintiff's claim against the City will be dismissed without prejudice.

---

[1] The Court notes that one of Plaintiff's briefs (Docket No. 45) contains numerous footnote indicators, but no footnote text.

[2] Plaintiff first filed a brief in opposition to the City's motion dismiss (*see* Docket No. 31) along with briefs opposing other Defendants' motions to dismiss. Plaintiff also then filed a number of supplements to his briefs. Because the Court was unable to discern to which motions the supplements related, the Court entered an Order (*see* Docket No. 39) indicating that one cohesive brief in opposition to each motion to dismiss was to be filed. Plaintiff's briefs at Docket Nos. 44 and 45 were filed in response to that Order.

## I. <u>BACKGROUND</u>

The Court presents herein an abbreviated version of the relevant facts, viewed in the light most favorable to Plaintiff, as alleged in the Complaint[3] and as set forth in certain additional documents that are properly considered by the Court in considering the Rule 12(b)(6) motion here. On October 18, 2024, Plaintiff was arrested by Defendant Officer Anthony M. Dilley (of the Pittsburgh Bureau of Police) and charged in a Police Criminal Complaint ("Criminal Complaint") in the Court of Common Pleas of Allegheny County, Pennsylvania, with one count each of the following offenses: Recklessly Endangering Another Person, in violation of 18 Pa. C.S.A. § 2705; Resisting Arrest, in violation of 18 Pa. C.S.A. § 5104; Evading Arrest, in violation of 18 Pa. C.S.A. § 5104.2(a); and Disorderly Conduct, in violation of 18 Pa. C.S.A. § 5503(a)(1). (Docket No. 12-1).

According to the Affidavit of Probable Cause attached to the Criminal Complaint,[4] Officer Dilley was working an approved secondary employment detail at a farmers' market in the City of Pittsburgh, when he heard a male voice call out, "Hey Officer Dilley." (Docket No. 12-1 at 6). As they had had prior interactions, Officer Dilley immediately recognized the speaker as Plaintiff. (*Id.*). Officer Dilley was also aware that Plaintiff had several active warrants for his arrest at that

---

[3] Plaintiff contends that this Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331 and 1343. (Docket No. 1, ¶ 2).

[4] Although Plaintiff attached to his Complaint in this case the underlying state court Criminal Complaint, he omitted the Affidavit of Probable Cause that was a required attachment to the Criminal Complaint. *See Sanders v. Mullaney*, No. 1:22-CV-00355, 2025 WL 3704294, at *4 (Dec. 22, 2025) (noting that an affidavit is required when the charging officer also requests an arrest warrant). That full document, the Criminal Complaint with attached Affidavit of Probable Cause, is referred to herein and is attached to the Motion to Dismiss filed by Defendant District Attorney Matthew Cullen. (Docket No. 12-1). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Here, the Affidavit of Probable Cause is a matter of public record and is also integral to Plaintiff's claims, *see infra*. The Court may consider and rely on the full text of the Criminal Complaint and attached Affidavit of Probable Cause, since Plaintiff has conceded its relevance and accuracy by attaching a portion of it to the Complaint and by relying on it in alleging the claims in his Complaint.

time. (*Id.*). Officer Dilley advised Plaintiff of the existence of such arrest warrants, and that Plaintiff should walk outside the farmers' market so that he could be taken into custody away from the crowd. (*Id.*). As they exited the main portion of the farmers' market, Officer Dilley explained to Plaintiff that he would be detained while the arrest warrants were confirmed, at which point Plaintiff immediately began to walk away from Officer Dilley. (*Id.*). When Officer Dilley told Plaintiff to stop, Plaintiff began running and Officer Dilley chased him on foot. (*Id.).* Plaintiff fled into the farmers' market, and Officer Dilley chased him through a crowd of people and approximately six separate stands selling farmers' market items. (*Id.*). The pursuit lasted approximately 45 seconds, at which point a bystander tripped Plaintiff, who fell into a stand selling items out of glass bottles. (*Id.*). Plaintiff knocked the stand over and fell into a crowd of people in the walkway. (*Id.*) Plaintiff got back up and took about eight more steps, until he was again pushed by a bystander. (*Id.*). Plaintiff fell again and narrowly missed hitting a person who was seated in a chair speaking to a group of children. (*Id.*).

Officer Dilley then attempted to take Plaintiff into custody and ordered him to place his hands behind his back. (Docket No. 12-1 at 6). Plaintiff did not comply, rolled onto his back, and said "why" when advised to follow commands and roll onto his belly. (*Id.*). Officer Dilley had to physically roll Plaintiff onto his belly, while Plaintiff actively resisted and attempted to get back up onto his knees. (*Id.*). After a brief struggle, Officer Dilley was able to take Plaintiff into custody. (*Id.*).

Plaintiff's preliminary arraignment was held and bail was set by a Magisterial District Judge on or about October 20, 2024.[5] (Docket No. 23-1 at 1-3). A hearing in Plaintiff's criminal

---

[5] Defendant attached to his brief in support of his Motion to Dismiss a copy of the Magisterial District Court Docket. (Docket No. 23-1). As noted, *supra*, with regard to the Affidavit of Probable Cause attached to the underlying Criminal Complaint here, the Court may consider the Magisterial District Court docket and the Court of Common Pleas docket since, in resolving a Rule 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters

case based on the above incident was held on October 30, 2024. (*Id.* at 3). The docket of the criminal case indicates that Plaintiff was present at the hearing, that the charges for Recklessly Endangering Another Person and Disorderly Conduct were withdrawn at that time, and that Plaintiff waived his right to a preliminary hearing on the remaining charges of Resisting Arrest and Evading Arrest. (*Id.* at 2). Plaintiff was formally arraigned on December 17, 2024, on the remaining charges. (Docket No. 23-2 at 1). Plaintiff's bail was altered by Order of Court on February 18, 2025, from a monetary bond to non-monetary conditions of release. (Docket No. 23-1 at 2). Plaintiff avers that on July 24, 2025, the Allegheny County District Attorney's Office entered an order of *nolle prosequi* on the two remaining charges against Plaintiff. (Docket No. 1, ¶ 21).

The Complaint in this case, which is based on the events surrounding Plaintiff's arrest, detention, and the Criminal Complaint filed against him in state court, alleges a variety of claims against a number of Defendants. Only one claim is alleged against the City, pursuant to 42 U.S.C. § 1983: Count V, Municipal Liability under *Monell* (against the City and Defendant County of Allegheny). (Docket 1 at 9-11). The City has filed its Motion to Dismiss the Complaint, the motion has been fully briefed by the parties, and it is ripe for decision.[6]

## II. <u>STANDARD OF REVIEW</u>

### A. <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the

---

of public record, including court files and records, and documents referenced in the complaint or that are essential to a plaintiff's claim that are attached to a defendant's motion. *See Colbert v. Mercy Behav. Health*, 845 F. Supp. 2d 633, 637 (W.D. Pa. 2012) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[6] The other Defendants named in this case have filed motions to dismiss Plaintiff's claims against them as well. Those motions are being addressed by the Court in separate Memorandum Opinions and Orders.

plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B. ***Pro Se* Pleadings**

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim," and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

## III. DISCUSSION

As noted, Plaintiff brings his constitutional claims in this case pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but instead provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Accordingly, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured

by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiff asserts here that Defendants, including the City, violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.[7]

More specifically, in Count V of the Complaint, Plaintiff alleges that the City is liable under the theory of municipal liability set forth in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), for the violations of his constitutional rights by Officer Dilley, a Pittsburgh Bureau of Police officer. (Docket No. 1 at 9). Notably, Counts I-IV of the Complaint allege claims against Officer Dilley for false arrest, false imprisonment, malicious prosecution, and setting excessive bail.[8] (*Id.* at 7-9).

Assuming, without deciding, that Plaintiff can allege a violation of his federally protected rights by Officer Dilley,[9] in order to hold the City liable for such violations under Section 1983, Plaintiff must allege more than a violation of his rights by the City's employee; Plaintiff must also sufficiently plead that those alleged violations are *attributable to* the City. "'[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020) (quoting *Monell*, 436 U.S. at 691). Thus, the alleged violation of rights must have been caused by actions that were taken pursuant to a

---

[7] In his response to Defendant Officer Dilley's motion to dismiss, Plaintiff states that he voluntarily withdraws his duplicative references in the Complaint to the Fourteenth Amendment, and indicates that his claims should proceed under the Fourth and Eighth Amendments. (Docket No. 43 at 6). Therefore, the Court does not address Plaintiff's claims to the extent they are alleged under the Fourteenth Amendment.

[8] Counts III (malicious prosecution) and IV (setting excessive bail) are also alleged against Defendant Assistant District Attorney Matthew Cullen.

[9] The Court notes that, in a separate memorandum opinion and order filed this day, the Court is dismissing Plaintiff's claims against Officer Dilley, without prejudice, for failure to state a claim pursuant to Rule 12(b)(6).

municipal "policy" or "custom." *See id.* (citing *Monell*, 436 U.S. at 690 (explaining what has been referred to as the *Monell* framework or *Monell* liability)). "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (internal quotation marks and citation omitted)). A "custom," on the other hand, involves "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted).

Acts by a government employee may be deemed to be the result of a policy or custom of the entity for whom the employee works in three situations: (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy,'" (2) "where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself,'" or (3) "where 'the policymaker has *failed to act affirmatively* at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been *deliberately indifferent* to the need.'" *Natale*, 318 F.3d at 584 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 417-18 (1997) (emphasis added, and internal quotation marks and citation omitted)). The "deliberate indifference" standard "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. Proving deliberate indifference "typically requires proof of a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).

Based on the allegations in the Complaint here, it is unclear which of the theories of liability Plaintiff is pursuing in this case. Plaintiff generally avers in Count V that the violations of his constitutional rights (presumably referring to the claims alleged in Counts I-IV against Officer Dilley for false arrest, false imprisonment, malicious prosecution, and setting excessive bail) "were the direct and proximate result of the official policies, customs, and practices of [the City], which was the moving force behind the deprivation of Plaintiff's rights." (Docket No. 1, ¶ 37). Plaintiff also alleges that the City has "widespread and persistent customs and practices of failing to adequately train, supervise, and discipline their police officers . . . which amounts to deliberate indifference to [people's] constitutional rights." (*Id.* ¶ 39). Plaintiff further generally avers that the City's "failure to adequately train its officers on the constitutional limits of their authority . . . directly caused [his] false arrest, false imprisonment, and malicious prosecution." (*Id.* ¶ 45).

In moving to dismiss the *Monell* claim, the City argues that Plaintiff has failed to identify an unconstitutional policy, he has failed to identify a policymaker, and he has failed to identify an unconstitutional custom. (Docket No. 25 at 3-10). The City also asserts that Plaintiff has failed to allege a *Monell* claim based on a failure to train because he has failed to allege facts showing a pattern of similar constitutional injuries. (*Id.* at 10-14).

In opposing the City's motion to dismiss, Plaintiff states that his claim against the City is based on a custom of failure to supervise or discipline and a failure to train its officers. (Docket Nos. 44 at 7-8; 45 at 4-5). Plaintiff also argues that he has provided support for his claim by alleging a documented pattern of police misconduct and inadequate discipline, supported by statistical data demonstrating widespread failure to hold officers accountable (which he says is a custom) along with findings from a 1997 Department of Justice investigation. (Docket Nos. 44 at 8; 45 at 3).

Upon review of the Complaint, the Court notes that Plaintiff's references to a policy or custom of the City are only conclusory, and Plaintiff does not identify any particular policymakers, nor does he plead that any particular policymakers took affirmative action that caused his injuries, nor does he plead that any actions taken by particular policymakers could be fairly treated as policy or custom. *See Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 198 (3d Cir. 2018). Accordingly, to the extent he may wish to do so, Plaintiff cannot proceed with his claim based on either of the first two theories of establishing liability. *See id.*; *Thomas v. County of Chester, Pocopson Home*, 312 F. Supp. 3d 448, 454 (E.D. Pa. 2018); *Doyle v. Neshaminy Manor, Inc.*, Civ. Action No. 2:18-cv-00098, 2018 WL 1954119, at *5 (E.D. Pa. Apr. 25, 2018).

Nevertheless, Plaintiff explains in his brief that his Complaint is based on the City's failure to supervise, discipline, and train its police officers, which can proceed under the third theory of establishing liability, a failure to act that demonstrates deliberate indifference. (Docket Nos. 44 at 8; 45 at 3). *See Robinson*, 722 F. App'x at 198-99. In order for a such claim to succeed, however, Plaintiff must show policymakers' "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Id.* at 199 (quoting *Bryan Cnty.*, 520 U.S. at 407). Also, "'for liability to attach in this circumstance the identified deficiency in a [municipal]ity's training program must be closely related to the ultimate injury.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

However, upon review of the Complaint here, the Court finds that Plaintiff's allegations are insufficient to meet these standards. First, the Complaint contains no specific allegations regarding the nature of the City's failure to train, supervise, or discipline its police officers. Instead, the Complaint baldly alleges that, "[u]pon information and belief, Defendant [the City] and Defendant County of Allegheny have widespread and persistent customs and practices of

failing to adequately train, supervise, and discipline their police officers and prosecutors, respectively, which amount to deliberate indifference to the constitutional rights of persons, including Plaintiff." (Docket No. 1, ¶ 39). Plaintiff also avers that the City's "failure to adequately train its officers on the constitutional limits of their authority . . . directly caused" the alleged violations of his constitutional rights by Officer Dilley, but such reference, too, fails to provide any detail regarding the specifics of the City's alleged failure to train and how it is linked to the violations alleged here. (*Id.* ¶ 45). The Complaint provides no additional facts regarding the City's alleged failure to train, however, and such general references merely state unsupported legal conclusions. Such averments, quite simply, do not allege a *specific failure* to discipline, supervise, or train that was *closely related* to the ultimate injury allegedly suffered by Plaintiff.

Additionally, Plaintiff argues that he has supported his allegations by citing an investigation by the United States Department of Justice ("DOJ") that found Pittsburgh Borough of Police management had engaged in a pattern designed to avoid disciplining officers, along with data from the City's Office of Municipal Investigations ("OMI") from 2010-2020. (Docket Nos. 1, ¶ 42; 44 at 7-8; 45 at 3-6). However, Plaintiff does not allege, nor can the Court infer from what is alleged in the Complaint, that the incidents described in the DOJ investigation and the OMI statistics are similar to the alleged violations of Plaintiff's constitutional rights at issue in this case. Absent allegations of fact showing such similarities, Plaintiff has failed to show that a municipal policymaker was on notice that a "new [training] program was necessary." *Thomas*, 749 F.3d at 223.

Furthermore, the Court notes that the temporal proximity of the DOJ investigation to the actions alleged in this case is extremely distant (approximately 20 years apart).[10] Without

---

[10] In his first brief in opposition to the City's Motion, Plaintiff refers to the "1997 DOJ investigation" and the "1997 consent decree" (which he indicates was lifted in 2005). (Docket No. 31 at 4).

additional allegations, the Court cannot "fairly infer" that the issues involved in the DOJ investigation continued for such a length of time and were the proximate cause of Plaintiff's rights being violated here. *See Fong v. City of Newark*, Civ. Action No. 22-7243, 2023 WL 8947378, at *13 (D.N.J. Dec. 28, 2023) ; *Estate of Roman v. City of Newark*, 914 F.3d 789, 799 (3d Cir. 2019) (holding that, when reviewing a *Monell* claim, a district court could "fairly infer" that the problems leading to [a consent decree] were occurring during the time of [the plaintiff's] allegations because the DOJ investigation resulting in the consent decree was active when the plaintiff's claims accrued). As presently alleged in the Complaint, Plaintiff's reliance on misconduct set forth in the DOJ investigation and OMI statistics is not sufficient to support a claim of municipal liability.

Moreover, Plaintiff makes no allegations in his Complaint as to how the City's alleged failure to train, supervise, or discipline relates to the City's alleged failures to act affirmatively, nor does Plaintiff allege how those failures ultimately resulted in the harm he suffered here. *See, e.g., Robinson*, 722 F. App'x at 199-200 (finding that a § 1983 claim was sufficiently pled under a failure-to-train theory, and the identified deficiency in the training program was closely related to the ultimate injury, where plaintiff alleged the facility's training to be inadequate, plaintiff's injuries involved infection, the facility allegedly received deficiency citations for failing to maintain infection control, and the deficiency in the training program included failure to maintain infection control). In fact, Plaintiff makes no attempt to draw a connection between the City's alleged failure to supervise/discipline/train and the harm he allegedly suffered in this case. Without such a connection, the Complaint is insufficient. *See Schlaybach v. Berks Heim Nursing & Rehab.*, 434 F. Supp. 3d 342, 357-58 (E.D. Pa. 2020) (explaining that a violation of federal law, standing alone, is not enough for *Monell* liability, and that "a plaintiff must still establish that the injury was the direct result of a municipal policy or custom"). Therefore, Plaintiff has failed to

allege a claim against the City based on the third theory of establishing liability, a failure to act (here, a failure to supervise, discipline, or train) demonstrating deliberate indifference to a need to take action.

Accordingly, Plaintiff has failed to state a claim for deprivation of his civil rights under § 1983 based on the City's alleged failure to supervise, discipline or train its police officers. Therefore, to the extent Count V is alleged against the City, that count of the Complaint will be dismissed. As the Court finds that permitting amendment of Count V would be neither futile nor inequitable, the dismissal will be without prejudice to amendment. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018) (stating that if a civil rights complaint fails to state a claim, a district court must grant leave to amend unless such amendment would be futile or inequitable).

## IV. **CONCLUSION**

For the reasons stated, the City's Motion to Dismiss Plaintiff's Complaint will be granted, and Plaintiff's claim against the City will be dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

An appropriate Order follows.

Dated: August 27, 2026

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record
Marc Johnson (via U.S. Mail)