**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARC JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER ANTHONY M. DILLEY, DISTRICT ATTORNEY MATTHEW CULLEN, THE CITY OF PITTSBURGH and THE COUNTY OF ALLEGHENY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 25-1202 |

## MEMORANDUM OPINION

Plaintiff Marc Johnson ("Plaintiff") filed his Complaint (Docket No. 1) in this matter pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated by Defendant Allegheny County (the "County") and others, during his arrest on October 18, 2024, and in the course of the subsequent prosecution of charges against him. Presently before the Court is the County's Motion to Dismiss Complaint (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and supporting brief (Docket Nos. 26, 27), Plaintiff's briefs in opposition (Docket Nos. 30, 35), and the County's replies (Docket Nos. 34, 46).[1] For the following reasons, the County's Motion will be granted and Plaintiff's claim against the County will be dismissed with prejudice.

[1] Plaintiff first filed a brief in opposition to the County's motion to dismiss (*see* Docket No. 30) along with briefs opposing other Defendants' motions to dismiss. Plaintiff also then filed a number of supplements to his briefs (including Docket No. 35). Because the Court was unable to discern to which motions the supplements related, the Court issued an Order (Docket No. 39) indicating that one cohesive brief in opposition to each motion to dismiss was to be filed. Plaintiff then filed a single brief (Docket No. 40) responsive to all the motions to dismiss. The Court issued an Order striking such brief, and again indicating that Plaintiff was to file separate briefs in response to each motion to dismiss. (Docket No. 42). Plaintiff did not file another brief in response to the County's motion, so the County filed a reply (Docket No. 46) to Plaintiff's earlier-filed supplement.

## I. BACKGROUND

The Court presents herein an abbreviated version of the relevant facts, viewed in the light most favorable to Plaintiff, as alleged in the Complaint[2] and as set forth in certain additional documents that are properly considered by the Court in resolving the Rule 12(b)(6) motion here. On October 18, 2024, Plaintiff was arrested by Defendant Officer Anthony M. Dilley of the Pittsburgh Bureau of Police, and charged in a Police Criminal Complaint ("Criminal Complaint") in the Court of Common Pleas of Allegheny County, Pennsylvania, with one count each of the following offenses: Recklessly Endangering Another Person, in violation of 18 Pa. C.S.A. § 2705; Resisting Arrest, in violation of 18 Pa. C.S.A. § 5104; Evading Arrest, in violation of 18 Pa. C.S.A. § 5104.2(a); and Disorderly Conduct, in violation of 18 Pa. C.S.A. § 5503(a)(1). (Docket No. 12-1).

According to the Affidavit of Probable Cause attached to the Criminal Complaint,[3] Officer Dilley was working an approved secondary employment detail at a farmers' market in the City of Pittsburgh, when he heard a male voice call out, "Hey Officer Dilley." (Docket No. 12-1 at 6). As they had had prior interactions, Officer Dilley immediately recognized the speaker as Plaintiff. (*Id.*). Officer Dilley was also aware that Plaintiff had several active warrants for his arrest at that

---

[2] Plaintiff contends that this Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331 and 1343. (Docket No. 1, ¶ 2).

[3] Although Plaintiff attached to his Complaint in this case the underlying state court Criminal Complaint, he omitted the Affidavit of Probable Cause that was a required attachment to the Criminal Complaint. *See Sanders v. Mullaney*, No. 1:22-CV-00355, 2025 WL 3704294, at *4 (Dec. 22, 2025) (noting that an affidavit is required when the charging officer also requests an arrest warrant). That full document, the Criminal Complaint with attached Affidavit of Probable Cause, is referred to herein and is attached to the Motion to Dismiss filed by Defendant District Attorney Matthew Cullen. (Docket No. 12-1). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Here, the Affidavit of Probable Cause is a matter of public record and is also integral to Plaintiff's claims, *see infra*. The Court may consider and rely on the full text of the Criminal Complaint and attached Affidavit of Probable Cause, since Plaintiff has conceded its relevance and accuracy by attaching a portion of it to the Complaint and by relying on it in alleging the claims in his Complaint.

time. (*Id.*). Officer Dilley advised Plaintiff of the existence of such arrest warrants, and that Plaintiff should walk outside the farmers' market so that he could be taken into custody away from the crowd. (*Id.*). As they exited the main portion of the farmers' market, Officer Dilley explained to Plaintiff that he would be detained while the arrest warrants were confirmed, at which point Plaintiff immediately began to walk away from Officer Dilley. (*Id.*). When Officer Dilley told Plaintiff to stop, Plaintiff began running and Officer Dilley chased him on foot. (*Id.).* Plaintiff fled into the farmers' market, and Officer Dilley chased him through a crowd of people and approximately six separate stands selling farmers' market items. (*Id.*). The pursuit lasted approximately 45 seconds, at which point a bystander tripped Plaintiff, who fell into a stand selling items out of glass bottles. (*Id.*). Plaintiff knocked the stand over and fell into a crowd of people in the walkway. (*Id.*) Plaintiff got back up and took about eight more steps, until he was again pushed by a bystander. (*Id.*). Plaintiff fell again and narrowly missed hitting a person who was seated in a chair speaking to a group of children. (*Id.*).

Officer Dilley then attempted to take Plaintiff into custody and ordered him to place his hands behind his back. (Docket No. 12-1 at 6). Plaintiff did not comply, rolled onto his back, and said "why" when advised to follow commands and roll onto his belly. (*Id.*). Officer Dilley had to physically roll Plaintiff onto his belly, while Plaintiff actively resisted and attempted to get back up onto his knees. (*Id.*). After a brief struggle, Officer Dilley was able to take Plaintiff into custody. (*Id.*).

Plaintiff's preliminary arraignment was held and bail was set by a Magisterial District Judge on or about October 20, 2024.[4] (Docket No. 23-1 at 2-3). A hearing in Plaintiff's criminal

---

[4] Defendant attached to his brief in support of his Motion to Dismiss a copy of the Magisterial District Court Docket. (Docket No. 23-1). As noted, *supra*, with regard to the Affidavit of Probable Cause attached to the underlying Criminal Complaint here, the Court may consider the Magisterial District Court docket and the Court of Common Pleas docket since, in resolving a Rule 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters

case based on the above incident was held on October 30, 2024. (*Id.* at 3). The docket of the criminal case indicates that Plaintiff was present at the hearing, that the charges for Recklessly Endangering Another Person and Disorderly Conduct were withdrawn at that time, and that Plaintiff waived his right to a preliminary hearing on the remaining charges of Resisting Arrest and Evading Arrest. (*Id.* at 2). Plaintiff was formally arraigned on December 17, 2024, on the remaining charges. (Docket No. 23-2 at 1). Plaintiff's bail was altered by Order of Court on February 18, 2025, from a monetary bond to non-monetary conditions of release. (Docket No. 23-1 at 2).

Plaintiff alleges that on December 16, 2024, Defendant Assistant District Attorney Matthew Cullen ("ADA Cullen"), of the Allegheny County District Attorney's office, "continued the prosecution" of Plaintiff by filing an "Information."[5] (Docket No. 1, ¶ 15). Plaintiff also avers that on March 25, 2025, his defense counsel "was forced to file a Motion to Compel Discovery." (*Id.* ¶ 18). Plaintiff further alleges that ADA Cullen, "or another agent, filed a Petition for Protective Order" in response to the Motion to Compel Discovery, in an attempt to avoid its discovery obligations and in bad faith. (*Id.* ¶ 19). According to Plaintiff, on March 31, 2025, "the Honorable Thomas P. Caulfield granted Plaintiff's Motion for Discovery and ordered the Commonwealth to produce the requested materials." (*Id.* ¶ 20). Plaintiff avers that on July 24, 2025, the Allegheny County District Attorney's Office entered an order of *nolle prosequi* on the two remaining charges against Plaintiff. (*Id.* ¶ 21).

---

of public record, including court files and records, and documents referenced in the complaint or that are essential to a plaintiff's claim that are attached to a defendant's motion. *See Colbert v. Mercy Behav. Health*, 845 F. Supp. 2d 633, 637 (W.D. Pa. 2012) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[5] A copy of the Information (which is a court filing that the Court may properly consider here) referenced in Paragraph 15 of the Complaint is attached to Defendant ADA Cullen's Motion to Dismiss as an exhibit. (Docket No. 12-3).

The Complaint in this case, which is based on the events surrounding Plaintiff's arrest, detention, and the Criminal Complaint filed against him in state court, alleges a variety of claims against a number of named Defendants. Only one claim is alleged against the County, pursuant to 42 U.S.C. § 1983: Count V, Municipal Liability under *Monell* (against the County and Defendant the City of Pittsburgh). (Docket 1 at 9-11). The County has filed its Motion to Dismiss the Complaint, the motion has been fully briefed by the parties, and it is ripe for decision.[6]

## II. <u>STANDARD OF REVIEW</u>

### A. <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a

---

[6] The other Defendants named in this case have filed motions to dismiss Plaintiff's claims against them as well. Those motions are being addressed by the Court in separate Memorandum Opinions and Orders.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

**B. *Pro Se* Pleadings**

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim," and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

## III. DISCUSSION

As noted, Plaintiff brings his constitutional claims in this case pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but instead provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Accordingly, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiff asserts here that Defendants, including the County, violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.[7]

As specifically concerns the County, Plaintiff alleges in Count V of the Complaint that the County is liable, under the theory of municipal liability set forth in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), for the violations of his constitutional rights by ADA Cullen, an employee of the office of the Allegheny County District Attorney ("ACDA"). (Docket No. 1 at 9-11). Plaintiff alleges, generally, that the constitutional violations committed by ADA

---

[7] In his response to Defendant Officer Dilley's motion to dismiss, Plaintiff states that he voluntarily withdraws his duplicative references in the Complaint to the Fourteenth Amendment, and indicates that his claims should proceed under the Fourth and Eighth Amendments. (Docket No. 43 at 6). Therefore, the Court does not address Plaintiff's claims to the extent they are alleged under the Fourteenth Amendment.

Cullen were the direct and proximate result of the official policies, customs, and practices of the County. (*Id.* ¶ 38). Plaintiff also generally avers that the County has widespread and persistent customs and practices of failing to adequately train, supervise, and discipline their prosecutors, "which amounts to deliberate indifference to the constitutional rights of persons, including Plaintiff." (*Id.* ¶ 39). Plaintiff further alleges that Defendant the City of Pittsburgh's failure to adequately train its officers on the constitutional limits of their authority, and the County's failure to adequately train its prosecutors on their constitutional obligations, directly caused the false arrest, false imprisonment, and malicious prosecution (alleged at Counts I, II, and III) of Plaintiff. (*Id.* ¶ 45). Notably, of these three claims, only the malicious prosecution claim (Count III) is alleged against ADA Cullen and Officer Dilley, while the false arrest and false imprisonment claims (Counts I and II) are alleged solely against Officer Dilley. (*Id.* at 7-8).

In moving to dismiss Plaintiff's *Monell* claim,[8] the County argues that, under the Pennsylvania Constitution and in accordance with the Allegheny County voters' approval of the creation of the Allegheny County Government under a Home Rule Charter (which required the adoption of The Administrative Code of Allegheny County), the County and the ACDA ( a "Row Office") are legally separate entities. (Docket No. 27 at 4-7). Accordingly, the County asserts, as the ACDA also sets its own policies and controls its own employees, the County should be dismissed from this case because it has no responsibility for the ACDA's policies and procedures. (*Id.* at 7-8). In support, the County cites to a number of cases from this district in which judges have recognized that the County is a legally separate entity from the ACDA and other Row Offices.

[8] The County also argues that Plaintiff has failed to state a claim against the County under *Monell* because he has failed to plead a specific policy or custom. (Docket No. 27 at 8-9). Plaintiff responds that he has pled an unofficial custom, namely the County's failure to provide adequate training or supervision to Assistant District Attorneys regarding their fundamental constitutional obligations, here specifically concerning the timely disclosure of exculpatory evidence (which appears to reference the parties' discovery dispute). (Docket No. 35 at 10-11). Because the Court is dismissing the claim against the County for the reasons set forth, *infra*, the Court need not delve into the complexities of analysis under *Monell* to address this argument.

(*Id.* at 7). *See Bracken v. County of Allegheny*, Civ. Action No. 2:16-cv-171, 2017 WL 5593451, at *9 (W.D. Pa. Nov. 21, 2017), *aff'd* 760 F. App'x 81 (3d Cir. 2019); *Bernard v. Ignelzi*, Civ. Action No. 2:23-cv-1463, 2025 WL 307004, at *3-4 (W.D. Pa. Jan. 27, 2025); *see also Shim v. Allegheny Cnty.*, Civ. Action No. 23-393, 2024 WL 1095811, at *1 (W.D. Pa. Mar. 13, 2024) (holding that the County is not a joint employer along with the Sheriff's Office, which under the relevant law, is an independently elected County Official vested with its own powers, duties, and responsibilities regarding the hiring, supervising, and terminating of all personnel within their respective offices). The County also notes that the ACDA agrees and, in its own words, has admitted that it sets its own policies and controls its own employees, and the County has attached as exhibits briefs filed by the ACDA in two of the cases cited. (Docket No. 27 at 7-8).

Plaintiff counters that it is the separation between the County and the ACDA that makes the County liable for purposes of *Monell*. (Docket No. 35 at 10). Plaintiff calls the separation argument a "functional misstep," and contends that the County cannot delegate its authority and responsibility "for personnel policies (including training) to an independently elected official, and then simultaneously disclaim liability for a systemic constitutional failure that results directly from those administrative policies." (*Id.*). In response, the County notes that it did not delegate any of its authority and responsibility; the voters of Allegheny County did so. (Docket No. 46 at 2 (noting that the separation at issue became enshrined in law when the Home Rule Charter became effective July 1, 2000, citing 53 Pa. Stat. Ann. § 13101)). The County also emphasizes that it is not arguing that Plaintiff cannot sue *anyone* for his claimed injuries; the County is only arguing that it is not a properly named party here. (*Id.*).

Plaintiff also argues that the County's separation argument fails because it disregards the "functional capacity test critical to *Monell*." (Docket No. 35 at 9). As the County points out,

however, there is no "functional capacity" analysis required under *Monell*, and to the extent Plaintiff may be mistakenly referring to a "functional analysis," such analysis is used to determine whether entities are functioning as arms of the state for purposes of immunity. (Docket No. 46 at 2-3 (citing, as an example, *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016))). *See also Murphy v. Middlesex Cnty.*, Civ. Action No. 15-7102, 2017 WL 6342154, at *3-4 (D.N.J. Dec. 12, 2017) (describing the "functional analysis" courts engage in to determine whether prosecutors are entitled to absolute immunity, and the three-factor test for sovereign immunity laid out by the Third Circuit in *Fitchik v. New Jersey Trans. Rail Opers., Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (*en banc*)). Thus, the County argues that Plaintiff's argument is misplaced here, and the County further points out that Plaintiff's citations in his brief do not provide a link that works in order to look at the citations upon which Plaintiff says he relies.[9] (*Id.* at 3).

Upon consideration of the parties' arguments, the Court finds that the County, a legally separate entity from the ACDA (which sets its own policies and controls its own employees), is not a properly named Defendant here for Plaintiff's municipal liability claim based on a failure to adequately train, supervise, and discipline ACDA prosecutors regarding their constitutional obligations (which Plaintiff also refers to as a custom). Accordingly, Plaintiff has failed to state a *Monell* claim for deprivation of his civil rights under § 1983 against the County based on its alleged failure to supervise, discipline, or train ACDA prosecutors (or for having such a custom). Therefore, to the extent Plaintiff's municipal liability claim at Count V is alleged against the County, that claim will be dismissed. Because the Court finds that further amendment of such

[9] The County also notes another linked citation provided by Plaintiff that does not work. (Docket No. 34 at 2). That non-working citation ostensibly referred to a Luzerne County case that Plaintiff represented as being similar to this case. Because the County and the Court are unable to discern what case Plaintiff is referring to in his brief, and since, in any event, a case from Luzerne County would clearly not involve the Home Rule Charter of Allegheny County, such case would be immaterial here.

claim against the County would be futile, the dismissal will be with prejudice. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018) (indicating that if a civil rights complaint fails to state a claim, a district court must grant leave to amend unless such amendment would be inequitable or futile).

## IV. CONCLUSION

For the reasons stated, the County's Motion to Dismiss Plaintiff's Complaint will be granted, and Plaintiff's municipal liability claim alleged against the County at Count V will be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

An appropriate Order follows.

Dated: August 27, 2026

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record
Marc Johnson (via U.S. Mail)